**GREENWOOD v. FURR.   (No. 10136.)**

(Court of Civil Appeals of Texas.  Fort Worth.
March 24, 1923.)

**1. Insane persons ⊚⇒33(1)—Application for
appointment of guardian for incompetent
held insufficient to show jurisdictional facts.**

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 4062, relating to application for appoint-
ment of guardian, and requiring statement of
jurisdiction of court, the allegation that G.,
40 years old, "is not mentally competent and
capacitated to manage, care for and preserve"
his estate, is insufficient to show jurisdictional
facts, as by article 4043 the court's power to
appoint guardians is limited to minors, per-
sons of unsound minds, and habitual drunk-
ards, nor is such allegation tantamount to an
allegation of unsound mind in view of article
4046, defining persons of unsound mind to be
idiots, lunatics, or insane persons.

**2. Insane persons ⊚⇒2—Evidence held not to
show idiocy, lunacy, and unsoundness of
mine within the statute.**

Evidence in proceedings to vacate an or-
der of appointment as guardian *held* insufficient
to show that petitioner was either an idiot,
lunatic, or person of unsound mind, within
Vernon's Sayles' Ann. Civ. St. 1914, art. 4046.

**3. Insane persons ⊚⇒2—Valuable right to dis-
pose of one's property should not be denied
on conclusion of individual as to mental ca-
pacity in specified particular.**

The right of a person to manage, control,
and dispose of his own property is a valuable
one, secured by constitutional provisions, and
such rights should not be wholly denied, based
upon a mere conclusion of a single individual
that he is mentally incapable in a specified par-
ticular.

**4. Insane persons ⊚⇒26—Judgment may not be
looked to as enlarging application for appoint-
ment of guardian for incompetent.**

A judgment cannot be looked to as enlarg-
ing an application for appointment of guardian.

**5. Insane persons ⊚⇒33(1)—Guardian over es-
tate of incompetent may be appointed only
when mental status fixed upon hearing and
verdict of jury unless waived.**

A guardian can be appointed over the es-
tate of a person of unsound mind as defined in
Vernon's Sayles' Ann. Civ. St. 1914, art. 4046,
only when his status as such has been fixed
upon a hearing and the verdict of a jury, unless
waived.

**6. Insane persons ⊚⇒33(1)—What application
and appointment of guardian of alleged in-
competent should show stated.**

An application for appointment of a guard-
ian of a person of unsound mind as defined in
Vernon's Sales' Ann. Civ. St. 1914, art. 4046,
made before taking effect of Acts 37th Leg.
(1921) c. 11, amending Rev. St. art. 4081 (Ver-
non's Ann. Civ. St. Supp. 1922, art. 4081),
should have made it appear that the subject of
complaint had been brought before the county

judge by a warrant as provided in Vernon's
Sayles' Ann. Civ. St. 1914, art. 4238, and a jury
impaneled as provided in article 4241, and
that such jury had found that the person al-
leged to be of unsound mind was in fact so,
or a habitual drunkard.

**7. Insane persons ⊚⇒33(1)—Application for
appointment of guardian of person of al-
leged incompetent insufficient as not showing
personal service of application.**

An application for appointment of a guard-
ian of a person of unsound mind as defined in
Vernon's Sayles' Ann. Civ. St. 1914, art. 4046,
not showing personal service upon the alleged
incompetent where he did not waive such no-
tice, is insufficient to show jurisdictional facts.

**8. Constitutional law ⊚⇒309(1)—Person can-
not be deprived of his rights without op-
portunity of being heard.**

A person must have an opportunity of being
heard before a court can deprive him of his
rights, and until notice is given the court has
no jurisdiction to proceed to judgment.

**9. Evidence ⊚⇒63—Person presumed to be
sane until decree obtained to contrary.**

In the absence of a decree that a person
is a habitual drunkard or of unsound mind, he
must be presumed to be sane.

**10. Insane persons ⊚⇒18—One over whom
guardian appointed as an incompetent held
entitled to right to request jury trial, and
to being heard.**

Under Const. art. 1, § 12, providing any
person injured shall have a remedy by due
course of law, and article 1, § 19, providing no
persons shall be deprived of life, liberty, etc.,
except by due course of law, one over whom
a guardian was appointed for alleged un-
soundness of mind prior to taking effect of
Acts 37th Leg. (1921), as amending Ver-
non's Sayles' Ann. Civ. St. 1914, art. 4081
(Vernon's Ann. Civ. St. Supp. 1922, art. 4081),
relating to appointment of guardians of persons
of unsound mind or habitual drunkards, was
entitled at least to an opportunity of request-
ing a jury and being heard on the issue of his
alleged unsoundness of mind.

Appeal from District Court, Stephens
County; W. R. Ely, Judge.

Petition by Frank C. Greenwood, to set
aside an order of the county court appoint-
ing H. B. Furr as guardian of petitioner's
estate. From a decree vacating such order,
Furr appealed to the district court, where a
decree was entered denying petitioner's pray-
er, and he appeals. Reversed, and rendered
for petitioner, with directions.

Kirby, King & Overshiner and W. C. Jack-
son, all of Abilene, and B. B. Greenwood, of
Cisco, for appellant.

John W. Hill and Frank S. Roberts, both
of Breckenridge, for appellee.

CONNER, C. J.  On June 20, 1918, H. B.
Furr, of Breckenridge, Stephens county, Tex.,

made application to the county court of said county to be appointed guardian of Frank C. Greenwood. On the 9th day of October thereafter the application was heard by the county court, and said Furr was "appointed guardian of the estate of Frank C. Greenwood." On the 31st day of March, 1921, Frank C. Greenwood filed in said county court his petition complaining of H. B. Furr, denied the existence of the facts authorizing the appointment, and sought to set it aside. The guardian appeared and answered, resisting the petition, but on a hearing the county court, at a regular term, on the 23d day of July, 1921, adjudged that the petitioner, Frank C. Greenwood, was entitled to the relief prayed for by him, and accordingly ruled that the order or decree of the court entered on the 9th day of October, 1918, appointing H. B. Furr guardian of the estate of Frank C. Greenwood, should be vacated, annulled, and set aside. From the judgment so rendered, H. B. Furr in open court excepted, and gave notice of appeal to the district court of Stephens county, where, upon a de novo trial, on the 9th day of December, 1921, the district court adjudged and entered a decree denying the relief sought by Frank C. Greenwood, and ordered a certified copy of the decree transmitted to the clerk of the county court to be entered upon the probate minutes. From this decree or judgment of the district court, this appeal has been duly prosecuted.

The application of appellee, Furr, which forms the basis of the proceeding, omitting formal parts, reads as follows:

"Now comes H. B. Furr, who resides in Stephens county, Tex., and respectfully represents and shows to the court: That Frank C. Greenwood, aged about 40 years, resides in Stephens county, Tex.; that he is possessed of certain real estate situated in the town of Breckenridge, Stephens county, Tex., of the estimate value of $800; that the said Frank C. Greenwood is not mentally competent and capacitated to manage, care for, and preserve said estate. Your petitioner would further show that said Frank C. Greenwood is without a lawful guardian of his said estate, and that it is to the best interest of said Frank C. Greenwood, and greatly to his advantage, that a guardian of his said estate should be appointed. Your petitioner would further show that the parents of said Frank C. Greenwood are both dead; that your petitioner is a suitable and proper person to act as such guardian, and is in no way disqualified therefor. Wherefore he prays that notice of this application be given as is required by law, and that upon hearing hereof that he be appointed guardian of the estate of the said Frank C. Greenwood, and for such other and further orders in the premises as to the court shall seem proper."

As shown by the record, the notice of the application and of the hearing thereon was by "posting" and by publication for a period of 10 days before the return day in a newspaper of general circulation. The decree of the county court, based upon the foregoing application, omitting formal parts, reads as follows:

"Now on this, the 9th day of October A. D. 1918, the same being at a regular term of this court, came on to be heard the application of H. B. Furr filed herein, to be appointed guardian of the estate of Frank C. Greenwood, and it appearing to the court that due notice of said application has been given in the manner and for the length of time required by law, and that all persons interested in the estate of the said Frank C. Greenwood have been cited to appear and contest said application, and it further appearing to the court that the said Frank C. Greenwood resides in Stephens county, Tex., and has resided in said county for more than 35 years, that he is now about 44 years of age, that the father and mother of the said Frank C. Greenwood are both dead, and it further appearing to the court that the said Frank C. Greenwood is seized and possessed of certain real estate situated in the town of Breckenridge, Stephens county, Tex., and it further appearing to the court, after hearing the evidence, that the said Frank C. Greenwood is not mentally competent to manage, care for, preserve, and dispose of said property, and that it would be greatly to the advantage of the said Frank C. Greenwood and to his estate that a guardian be appointed therefor to the end that said estate be managed, controlled, and disposed of, under the direction of the court, and it further appearing to the court that the said H. B. Furr is a proper and suitable person to act as such guardian, and he is in no way disqualified therefor, it is therefore ordered, adjudged, and decreed by the court that the said H. B. Furr be, and he is hereby appointed guardian of the estate of the said Frank C. Greenwood, and that letters as such issue to him upon his filing bond in the sum of $500 and taking the oath prescribed by law."

We are of the opinion that the district court erred in its judgment, and that the judgment that should have been rendered was one in accord with the judgment of the county court vacating the guardianship proceedings. The requirements of our statutes and proceedings relating to the subject are to be found in title 64, V. S. Texas Civil Statutes. It is provided in chapter 1, containing general provisions (article 4043), that the county court "shall appoint guardians of minors, persons of unsound mind, and habitual drunkards," etc. The term "minor" is defined (article 4045) as "male persons under 21 years of age, and females under 21 years of age who have never been married." Persons of unsound mind are defined as "idiots, lunatics or insane persons" (article 4046), and habitual drunkard as "one whose mind has become so impaired by the use of intoxicating liquors or drugs that he is incapable of taking care of himself or property" (article 4047). Chapter 3 of the title provides that a proceeding for the appointment of a guardian is com-

menced by written application, filed in the county court of the county having jurisdiction of the case. Such application may be made by any person and it shall state:

. "1. The name, sex; age and residence of the minor.

"2. The estate of such minor, if any, and the probable value thereof.

"3. Such facts as show the jurisdiction of the court over the case."

Article 4062.

In chapter 6 of the title (article 4091) it is provided that:

"Whenever it may appear to the county judge that the interests of any minor and his or her estate, or either, required immediate appointment of a guardian, he shall, either in open court or in vacation, without citation and with or without written application therefor, appoint some suitable person temporary guardian," etc.

In chapter 16 of the title (article 4238) it is provided that:

"If information be given to the judge of the county court that any person of the county is of unsound mind, or is an habitual drunkard, and is without a guardian, such judge, if satisfied that there is good cause for the exercise of his jurisdiction, shall, either in term time or in vacation, issue a warrant to the proper officer commanding that such person be brought before him at a time and place to be named in such warrant."

The present proceeding cannot be sustained under chapter 6, relating to the appointment of a temporary guardian, for in that chapter it is provided (article 4092) that such an appointment "shall state that unless the same is contested at the next regular term of the court, after service of citation, the same shall be made permanent." No such citation is in the order before us, nor was any such order entered upon the minutes, as is essential in cases of temporary appointments.   See Threatt v. Johnson (Tex. Civ. App.) 156 S. W. 1137. Nor does it appear to have been a proceeding to which chapter 16 specially relates, for there is no contention that in the present case the proceeding was instituted by the county judge upon information, and that he thereupon issued a warrant, as prescribed in article 4238, commanding the personal attendance of the appellant. Nor was a jury impaneled to try the case, as provided in article 4241 of that chapter. So that the present proceeding, apparently, at least, was begun and prosecuted under chapter 3, and other general articles to be found in the title. Chapter 3, it must be noted, relates more particularly to the appointment of a guardian for a minor, the articles of the statutes requiring the name, sex, age, and residence, etc., all having reference to minors, and not naming either idiots, lunatics, or insane persons. However, for the present, at least, we shall discuss the case as presented and as affected by the general provisions relating to the subject.

[1] By a reference to appellee's application, it may be seen that it is there stated that Frank C. Greenwood, at the time of the application, was about 40 years old, and possessed of real estate then estimated at the value of $800, and the jurisdictional facts upon which the application was predicated was that "the said Frank C. Greenwood is not mentally competent and capacitated to manage, care for and preserve said estate." The statute (article 4062, supra) requires an application to state "such facts as show the jurisdiction of the court over the case," and we are of the opinion that the allegation that Frank C. Greenwood was "not mentally competent and capacitated to manage, care for and preserve his estate" is insufficient. By article 4043, quoted above, the court's power to appoint guardians is limited to "minors, persons of unsound mind and habitual drunkards." There is no contention that Frank C. Greenwood was a minor, or that he was an habitual drunkard, and, if, under other circumstances, the allegation that he was "not mentally competent and capacitated to manage, care for, and preserve his estate" might be said to be tantamount to an allegation that Frank C. Greenwood was of "unsound mind," yet, in a guardianship proceeding, and in view of the specific definition given in article 4046, above, of the terms "unsound mind," we are not inclined to so interpret the jurisdictional allegation of the application. Unsound mind is specifically defined in the article referred to as "idiots, lunatics or insane persons," and we have examined numerous definitions of the terms "idiots, lunatics and insane persons," but an allegation that a person is not mentally competent and capacitated to manage, care for, and preserve a specific piece of property does not fairly come within any of such definitions. We think the application to be sufficient should have specifically alleged that Frank C. Greenwood was an idiot, a lunatic, or an insane person, for it is of such, and of such only, that the power has been given the county court to appoint a guardian. We are the more inclined to this construction of the application in view of the testimony offered in this case.

Frank C. Greenwood testified with apparent clearness and intelligence in numerous particulars, his testimony being detailed on three pages of the statement of facts. He stated his name; that the appellee had been acting as a guardian; that he had never been served "with any papers to come into court in connection with that guardianship. If I was I do not remember it. I was not served with any citation or papers to come into court on this hearing when Mr. Furr was appointed my guardian. I did not know anything about it at the time. I

was never tried in the county court for lunacy." On cross-examination he testified that, when Mr. Furr was appointed guardian, he was in Breckenridge, but did not come over to the courthouse with him, and knew nothing about it, "until one day he came to me and asked me if I needed any money." The witness further stated where he was living when his mother died; that he knew his father died in Oklahoma; that a Mr. Taylor went up and helped bury him; that Mr. Taylor was not kin to him; that his brother's name was B. B. Greenwood; that he was "47 last month"; that before his mother's death he attended to his business, which was painting signs, selling papers and books, and doing anything else he could; that on his mother's death he inherited some property which before the oil boom was not worth much; that Mr. Furr let him have money when he needed it; that after the oil boom came his property became very valuable; that he knew the name of the county clerk, but could not call it at the time; that he did not know the name of the district clerk; that he knew the name of one of the Governors of Texas; that it was "Mr. Hunt."

The appellee, Furr, testified that he had known Frank C. Greenwood and his family about 31 years, and was familiar with the mental condition of Frank C. Greenwood and was at the time of his appointment as guardian, and that—

"I have always regarded him just as the general public has, that he was not competent to handle business of any kind; that his mind would compare with that of a child of 7, 8, or 10 years; I would say a child of 12 or 13 years would be about as competent as he has been all of the time. * * * Of course he is not in a position to know anything about the value of property. I presume he knows what a dollar is, and how much it is worth, but when it comes to getting down to the question of values of property he does not know how to preserve an estate and keep the money. * * * I have never filed any report as guardian since I have been appointed guardian. I have not done it. It was just carelessness. I know the law requires me to file one every year. I have never filed one. I can file one at any time. I stated a while ago that people would not buy the property or take title to it without some court proceeding. It is not a fact that they would not take it without his individual signature to the deed, and that he had to join in the deed with me as guardian. That is not a fact. It was upon my request that he signed it also. I do not know that he signed every piece of paper. Whenever it was concerning real estate, and I signed it as guardian, I also required him to sign as individual. * * * I don't think he was ever alleged to be a lunatic. I do not think he is a lunatic. I do not think he is an idiot. I do not think he is an insane person. * * * I think that Frank C. Greenwood has sufficient mentality to know the nature of an obligation or an oath administered in court. He would not mis-

represent anything at all if he knew it. He would not have to be sworn to state the facts. I mean that he would not testify falsely as to facts. * * * He knows the difference between right and wrong. He knows what it means to hold up his hand and be sworn. He knows the import of an oath. Prior to his mother's death he sold newspapers and painted. He earned money. He can change money, and change it right. He transacts that business about as well as anybody. He just sold newspapers, but he did that. He paints buggies and signs. He is a sign painter. He is not an expert sign painter. Sometimes he gets his N's and S's around. He has plenty of sense to know what you are telling him if you tell him to go get a horse. He would carry out the instructions and go and get it. * * * He don't know the value of property. In small matters I think he would know as good as anybody. In small matters he has as much sense as anybody. But when it comes to telling land values and oil values he cannot do it. A lot of other people around here may be in the same fix. I have not been appointed for them. If he has confidence in any one he would be easily led to do anything, if it was not wrong. If it was not wrong he would be easily led into doing it, but if it was wrong I think it would be pretty hard to lead him to do it, or to do anything in violation of the law. He is a good, moral fellow; there is not any better anywhere."

[2, 3] The appellee's evidence further shows that his application for appointment was intended kindly, and for the benefit of Frank C. Greenwood, based upon his undoubted idea that Frank C. Greenwood would not and could not wisely manage his estate, but we do not think it can be said from the evidence that Frank C. Greenwood was either an idiot, a lunatic, or a person of unsound mind, within the definition of those terms as given by the statutes we have quoted. Mr. Furr was undoubtedly of the opinion, as he alleged in his application, that Frank C. Greenwood was "not mentally competent and capacitated to manage, care for and preserve his estate," but this evidently is but a conclusion, and no fact is stated from which the court could draw the conclusion. No other witness so testified, nor does the statement of facts develop any specific action which demonstrates his incapacity to so do. It is to be remembered that the right of person to manage, control, and dispose of his own property is a valuable one, secured to us by constitutional provisions, and we do not think such rights should be wholly denied, based upon a mere conclusion of a single individual that he is mentally incapable in a specified particular.

[4] It is to be further noted that the decree of the county court appointing appellee guardian finds no more than is stated in the application. Indeed, the judgment cannot be looked to as enlarging the application. See 15 R. C. L. p. 604, § 43, and McCamant v. McCamant (Tex. Civ. App.) 187 S. W. 1096, citing Black on Judgments, §§ 170 and 184.

[5-7] We are of the further opinion that, irrespective of what we have already said with reference to the sufficiency of appellee's application, it is wholly insufficient for yet another reason. By again adverting to the different character of guardians provided for in chapters 3, 6, and 16, and considering the subject as a whole, in the spirit of well-recognized principles, we are of the opinion that at the time of the order under consideration an application for the appointment of a guardian of a person of unsound mind, as defined in article 4046, c. 1, of the title, should have made it appear that the subject of complaint had been brought before the county judge by a warrant as provided in article 4238 of chapter 16, and a jury impaneled as provided in article 4241 of that chapter, and that such jury had found that the defendant in the action was in fact of unsound mind or an habitual drunkard. It is undisputed that there was no personal service on the appellant of the application in this case. Nor was he present upon a hearing of the application or entered an appearance, nor did he waive notice of the proceeding, and we think it must be implied that a guardian can be appointed over the estate of a person of unsound mind, as defined in our statute, only when his status as such has been fixed upon a hearing and the verdict of a jury, unless waived.

[8, 9] In the chapter relating to appointment of a guardian for a minor, it is provided (article 4066) that, if the minor be 14 years of age or over, he shall be personally served with citation to appear and answer the application, so that he may make choice of the guardian. No such provision is made for personal service upon idiots, lunatics, or insane persons, evidently for the reason that service upon individuals in that condition would be useless. We feel unwilling to adopt a construction of the law that will admit of a decree against a person not found or adjudged to be an idiot, lunatic, or insane person, which, in its effect, deprives him of the right to control his own property without personal service upon him of the complaint, and an opportunity to be heard. As said in 24 R. C. L. p. 1262, paragraph 3:

"It is a principle that lies at the foundation of all jurisprudence in civilized countries that a person must have an opportunity of being heard before a court can deprive him of his rights. Any other doctrine would be antagonistic to our form of government, and to the provisions of our Constitution. No court, in the ordinary administration of justice, in common-law proceedings, can exercise jurisdiction over a person unless he shall voluntarily appear, or is found within the jurisdiction of the court, so as to be served with process. Therefore, in order to authorize a court to determine the adverse claims of parties touching their rights in things, judicial process is indispensable. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. Judgment without notice wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered. The mere fact that a defendant has knowledge of a suit pending against him is not sufficient to give the court jurisdiction. Even in proceedings in rem notice, either actual or constructive, is required, in order that the judgment may have any validity."

It is easily conceivable that a person perhaps deficient in education, or by reason of other circumstances, may be wholly ignorant of a published or posted notice that an application has been filed charging him with unsoundness of mind or of being an habitual drunkard, and, in the absence of a decree legally obtained that he is such, he must be presumed to be sane, and, as stated, we do not think a construction of the law should be adopted which might have the effect of depriving him of constitutional guaranties in the absence of a trial by jury, or at least in the absence of an opportunity to have the issue so determined. See Const. art. 1, §§ 15, 19, and 29; Loving v. Hazelwood (Tex. Civ. App.) 184 S. W. 355; White v. White (Tex. Civ. App.) 183 S. W. 369; White v. White, 108 Tex. 570, 196 S. W. 508, L. R. A. 1918A, 339.

[10] Appellee contends that the requirements relating to trial by jury, as specified in chapter 16 of title 64, are to be disregarded because of an act of the Thirty-Seventh Legislature approved February 18, 1921, which amends article 4081, c. 5, of said title (Vernon's Ann. Civ. St. Supp. 1922, art. 4081), so as to provide for the appointment of a guardian of a person of unsound mind or an habitual drunkard on a hearing before the court without the necessity of a jury trial where no request for a jury has been made, and undertaking to validate all appointments of guardians under the law existent at the time of the passage of the act. See General Laws of Texas, Thirty-Seventh Legislature, p. 15. The contention, however, we think, must be overruled. By an examination of the validating act it will be seen that the Legislature itself was in grave doubt as to whether a guardian could lawfully be appointed for any person of unsound mind or an habitual drunkard without a warrant and jury trial, as required in the title and chapter hereinbefore several times referred to, thus giving added force, perhaps, to what we have said and to the authorities cited in the immediately preceding paragraphs of this opinion. It will also be noted that in the article as amended the right to a jury and to a hearing is plainly implied. It is also true as a matter of fact that the appointment under consideration and the present action to set aside the order therefor all occurred prior to the taking effect of the amendment referred to.

Article 1, § 13, of our Constitution, provides that:

"All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Section 19, art. 1, reads:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Under such constitutional guaranties at the time appellant was deprived of his right to exercise authority and control over his property, he was entitled at least to an opportunity of requesting a jury and being heard upon the issue of his alleged unsoundness of mind. As we have seen, no such opportunity was awarded him. He was not personally served with process, nor did he have actual notice of the proceedings, or by any character of appearance or waiver consent thereto, and it may be well doubted that the Legislature would have the power to deprive him of such right of being heard and of having a determination of the issue by qualified jurymen of his country. See White v. White, 108 Tex. 570, 196 S. W. 508, L. R. A. 1918A, 339, cited above. In that case it was held that, there being a statutory right to a jury trial in lunacy proceedings at the time of the adoption of the Constitution and of its article 1, §§ 15, 19, and 29, providing that the "right of trial by jury shall remain inviolate," etc., an act of the Thirty-Third Legislature (chapter 163, amending Revised Statutes, § 150—165 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 150–165]), substituting a commission for a jury in such proceedings, was invalid. We see no reason why the principles discussed in this case are without application here; more particularly in view of the fact already adverted to that the alleged validating act invoked took effect after the institution of the present proceeding, and further in view of the terms of section 16, art. 1, of the Constitution, providing that:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

This provision of our Constitution was discussed in the case of Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249. Of the provision, the court, among other things, said:

"The making of it evidences an intention to place a further restriction on the power of the Legislature, and it must be held to protect every right, even though not strictly a right to property, which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right. A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law."

So that, on the whole, we conclude, as before stated, that the district court erred in its judgment, and that the judgment should be reversed and here rendered in favor of appellant, setting aside and annulling the original order of the county court appointing appellee H. B. Furr guardian, and that this order should be certified to the county court of Stephens county, Tex., for observance, and such further proceedings as may be authorized by law, and not inconsistent with this opinion. It is accordingly so adjudged.