DAMRON et al. v. RANKIN et al.

No. 738.

Court of Civil Appeals of Texas. Eastland.

Jan. 2, 1931.

Jerome P. Kearby, of Fort Worth, for appellants.

Bob McCampbell, of Comanche, for appellees.

LESLIE, J.

J. T. Damron and wife, Laura P. Damron, sued G. W. Haggard et al. in trespass to try title in the district court of Comanche county to recover three tracts of land specifically described, one containing 100 acres, a second 73 acres, and a third 80 acres. At the same time the said J. T. Damron, as guardian of Quimbey Childers, filed suit against G. D. Rankin, G. W. Haggard et al., in the county court of Comanche county to set aside as void (1) the appointment of said G. D. Rankin as guardian of the person and estate of Quimbey Childers; (2) the sale by said Rankin as guardian of the first and second tracts of land mentioned; and (3) the court orders authorizing the sale of said lands, and the order of the court confirming the same. This was a direct attack. The suit was tried in the county court, went against the plaintiffs, was appealed to the district court, and there, by agreement of parties, consolidated with the suit in trespass to try title. The trial of the consolidated causes resulted in a judgment in favor of plaintiffs for the 80-acre tract, and in favor of the defendants for the other two. The first part of the judgment is not appealed from by the defendants, but plaintiff appeals from the judgment in the other respects.

J. T. Damron and wife, by right of inheritance, are entitled to recover the lands in controversy, provided the same were not legally disposed of by a duly authorized guardian of Quimbey Childers, deceased, and who was alleged to be a person of unsound mind.

As stated, this is a direct attack on the proceedings of the county court in all the respects above mentioned, and, if those proceedings in appointing G. D. Rankin guardian of the person and estate of Quimbey Childers. and in ordering and confirming the sale by such guardian of the lands of the said Quimbey Childers, are void, then a necessary link in the defendants' chain of title to said lands, and especially the title of G. W. Haggard, fails, and judgment should be for the plaintiffs, unless recovery by them is defeated on some other ground.

The controlling facts are, substantially, as follows: June 4, 1925, said G. D. Rankin and his attorney, accompanied by Quimbey Childers, alleged to be of unsound mind in the application for guardianship, entered the office of the county judge during vacation of his court, presented that official an application by Rankin to be appointed temporary guardian of the person and estate of Quimbey Childers. The application alleged him to be a boy, twenty-two years of age, a resident of the county, possessed of an estate of 253 acres of land in the county, and that it was incumbered by a debt, etc. Without proof or further evidence than the mere appearance of the alleged lunatic and the unverified application, the allegations of the petition seem to have been taken as true, and the judge then and there appointed said Rankin as temporary guardian of the person and estate of Quimbey Childers, on the ground that he was a person of unsound mind. The order of appointment is in due form, and directed the clerk to issue "citation" (notice) as required by law; that is, in compliance with article 4137, R. S. 1925. The order of the judge meets the requirements of article 4135, pertaining to such temporary guardianships, by stating "that unless the same is contested at the next regular term of the court, after notice, the same shall be made permanent." At the next regular term the judge, sitting as a court (notice having been published "once each week for a period of ten days before return day"), made the temporary guardianship of G. D. Rankin permanent, reciting said Quimbey Childers to be a "non compos mentis," and that no one had appeared to contest the appointment. With this appointment as the basis, G. D. Rankin proceeded as such guardian to make application for the sale of the 100-acre and the 73-acre tracts of land in question, obtained orders authorizing the sale thereof, sold and conveyed the land,

and obtained from the court an order of confirmation of such sale. Said guardian, by authority of such order, sold and conveyed the land to H. O. Rowland, who thereafter by quitclaim deed transferred the same to the F. & M. Bank, and the bank by like deed conveyed the same to G. W. Haggard, and the said Rowland by a quitclaim deed likewise conveyed the land to C. A. Hillman, who also made a warranty deed and transfer of the land to said G. W. Haggard, defendant. The orders, etc., here sought to be set aside will not be specifically referred to hereafter, since, if the order appointing Rankin as guardian is found to be void, his acts under such appointment, including the purported guardian's deed to H. O. Rowland, will necessarily fall under this attack.

It should here be noted that, when the purported temporary guardianship here involved was attempted to be made permanent, there was then no hearing or trial before the court upon any issue of insanity vel non of the alleged lunatic; and, as more particularly pointed out in the latter portion of this opinion, the proceedings had before the county judge, together with his action upon the application for the appointment of a temporary guardian, would, in no respect, constitute a sufficient hearing upon which to predicate the appointment of a subsequent permanent guardian for a person of unsound mind under and by virtue of the requirements of article 4123, Revised Civil Statutes of 1925, or any other statute authorizing the appointment of a guardian for such person. Further, there had been no prior adjudication of any character to the effect that Quimbey Childers was a person of unsound mind. This is material on a phase of the case later to be discussed, and is here referred to more as a circumstance emphasizing the particularity with which this purported guardianship of a person alleged to be of unsound mind was attempted to be taken out under and by virtue of the provisions of our statutes (articles 4134 to 4138, R. S. 1925), relating, as we conclude, to temporary guardians for minors only. In other words, the entire proceeding whereby G. D. Rankin was appointed guardian of the person and estate of Quimbey Childers was had under a statute having application exclusively to the appointment of temporary guardians for minors, and no application whatever to the appointment of guardians for persons of unsound mind. Our statutes just cited do not provide for temporary guardians for such persons.

The statutes providing for the appointment of temporary guardians of the person and estate, or either, of minors, were enacted in 1905. The first article thereof (4134) provides:

"Whenever it appears to the county judge that the interest of any minor and his or her estate, or either, requires immediate appointment of a guardian, he shall, either in term time or in vacation, without citation and with or without written application therefor, appoint some suitable person temporary guardian of the person of such minor and his or her estate or either. * * * The appointment so made may be made permanent."

The article specifically refers to minors, and nothing is said about lunatics and drunkards, for the sufficient reason, we think, that these two classes of persons and their interests in matters of guardianship were by the Legislature deemed amply provided for under chapter 12, title 69, R. S. 1925 (articles 4267–4284), and article 4123 (as it stood prior to its amendment in 1921), and other related articles.

Chapter 12 deals in great particularity with the procedure whereby the guardian of a lunatic or drunkard may be appointed. They are the subject-matter of that specific enactment. This chapter and article 4123 (as it stood before its amendment in 1921) have been embodied in the statutes of this state since 1876. With these statutes in force from so early a date, it seems quite certain that, if the Legislature, in 1905, in enacting the law relating to temporary guardians of minors, had desired or intended to make that act apply to lunatics and drunkards, it could easily have used appropriate language to that effect, or used the terms "lunatic" and "drunkard" co-ordinately with the word "minor" in article 4134, R. S.

In other words, with these statutory enactments quite fully providing the procedure by which guardians of the person and estate, or either, of minors, lunatics, and drunkards could be appointed, the Legislature, in 1905, knowing these laws, and evidently designing to leave them unchanged as to lunatics and drunkards, enacted the law providing for the "immediate appointment of a guardian" of a minor and his estate, or either, in vacation or term time, etc., whenever it appeared to the county judge that it was to the interest of the minor or his estate to do so. By this statute it was no longer necessary in the case of a minor to await the coming of a regular term of court, as had been the case theretofore (articles 4114 and 4117, R. S.) to appoint a guardian for a minor when his interest in person or estate required such.

Said chapter 12, providing for guardians for lunatics and drunkards under certain conditions, provides as follows in article 4274:

"Each provision of this title relating to the guardianship of the persons and estates of minors shall apply to the guardianship of the persons and estates of persons of unsound mind, and habitual drunkards, insofar as the same are applicable."

This article does not aid in furnishing a basis for the guardianship proceedings under which the lands in controversy were sold.

This article is a part of chapter 12, which provides a comprehensive method and procedure for the appointment of a guardian for a lunatic or a drunkard, and was enacted, as pointed out, long prior to the law authorizing the temporary guardianships of minors (1905), and such reference as said article makes to the provisions of this title (69), relating to guardians of the person and estate of minors, and undertakes to make them applicable to guardianships of persons of unsound mind, would necessarily refer to those provisions of the law relating to guardianships of persons and estates of minors that were in existence at the time said article 4274 undertook to make them applicable "insofar as the same are applicable" in proceedings relating to lunatics and drunkards. Hence article 4274, supra, could have no reference to the law authorizing temporary guardians for minors.

Further, it appears that, since 1885, there has been another provision of law applicable alike to minors, persons of unsound mind, and habitual drunkards. It is found in article 4129, R. S. 1925, and is as follows:

"When from any cause, the estate of a minor, person of unsound mind or of an habitual drunkard is without a guardian, and such estate is likely to injure or waste, the county judge shall, with or without application, in term time or in vacation, appoint some suitable person to take charge of such estate. * * *"

While this statute has no necessary bearing on the issues in this case, it seems to demonstrate the lack of any necessity for a law authorizing a temporary guardian in the case of a person of unsound mind, and this provision is made specifically applicable to minors, lunatics, and drunkards just as article 4134 providing for temporary guardians of minors is made specifically applicable to minors only. We fail to discover any purpose or reason that should have prompted the Legislature to make the law of temporary guardians for minors applicable to lunatics and drunkards.

It not only appears from this record that the guardianship proceedings under attack were under and by virtue of the statute authorizing the appointment of temporary guardians for minors, but it is equally certain that no attempt was made to bring the proceedings under said chapter 12 of title 69, that chapter providing for a jury trial upon information, etc. Under that chapter it appears that a jury trial (article 4270, R. S.) and finding by that body that the person charged is of unsound mind is a prerequisite to the appointment of the guardian of the person and estate of such persons. Articles 4271 to 4272, R. S., 1925; White v. White, 108 Tex. 571, 196 S. W. 508, L. R. A. 1918A, 339; Greenwood v. Furr (Tex. Civ. App.) 251 S. W. 332; Ward v. Compton (Tex. Civ. App.) 203 S. W. 129. No such steps were taken in this case.

Further, we desire to test the validity of this purported guardianship proceeding under other provisions of the statute. Chapter 2, title 69 (articles 4113–4117), deals with "commencement of proceedings" for appointment of guardians of the person and estate of minors. It is there provided (1) that any person may make such application for guardianship (article 4113, R. S.), and (2) that the judge may initiate such proceedings when it comes to his knowledge that there is within his county a minor without a guardian of his person or estate. In each instance the character of notice required is provided for, and a guardian may be appointed only at a regular term of court. These provisions have been in force since 1876. Chapter 3 of said title (articles 4118–4138) and the first division thereof deals with the regular appointment of guardians of persons and estates of minors (articles 4118 to 4120). The following article 4121 prescribes who may be the guardian of persons of unsound mind, or habitual drunkards, and article 4123 provides as follows:

"At a regular term of the court, after notice as required by law, the court may proceed to the appointment of a guardian. Before appointing a guardian, the court must be satisfied:

"1. That the person for whom a guardian is sought to be appointed is either a minor, a person of unsound mind or an habitual drunkard.

"2. That the court has jurisdiction of the case.

"3. * * *

"4. That the rights of persons or property are to be protected. All issues herein shall be determined by the court on hearing, unless a jury is demanded, but it shall not be a prerequisite to such appointment that there has been a jury trial, verdict and judgment that the person is of unsound mind, or is an habitual drunkard, nor is such person required to be present at the trial.

"The remedy herein provided is cumulative of that provided in Chapter 12 hereof, for the guardianship of persons of unsound mind and habitual drunkards, and may be resorted to without invoking the latter remedy. (Acts 1921, p. 15.)"

■ Regarding the preceding article as amended in 1921 as cumulative of chapter 12, title 69, and conceding that the jury trial for a lunatic and his presence at such trial may be dispensed with, as therein indicated, and regarding the procedure marked out in said article for the appointment of a guardian of a lunatic as complete and sufficient within itself, nevertheless the proceeding for the guardianship in the instant case, measured by the requirements of this article, must be held invalid, for the apparent reason that, if it be legal to proceed to trial on the issues in such a case without a jury, the minimum prerequi-

site to the appointment of a guardian of the person and estate of one of unsound mind would be a judicial ascertainment of the existence of that state of mind by the court at a regular term after the person charged had been served with proper personal notice of the proceeding. Article 4123, supra; Greenwood v. Furr (Tex. Civ. App.) 251 S. W. 332; Ward v. Compton (Tex. Civ. App.) 203 S. W. 129; Warrick v. Moore County (Tex. Civ. App.) 291 S. W. 950.

Since the acts of 1921 provide for waiver of the jury and dispense with the presence at the trial of the one charged of being of unsound mind, it is still essential as a basis for the appointment of a guardianship of such person that there should be a "hearing" before the court on the issue of insanity, followed by an adjudication of that issue. It conclusively appears that there was no. such "hearing" in the instant case, as contemplated by the statute, and such hearing, to our minds, signifies a judicial determination by the court from legitimate testimony of the issue of insanity of the person charged with being in that condition of mind. That which transpired before the judge in his office, when he attempted to appoint G. D. Rankin as temporary guardian, was not sufficient to constitute a hearing such as would justify the appointment of G. D. Rankin as a permanent guardian at a subsequent date, were the proceedings held sufficient in other respects. All persons are presumed to be sane until the contrary is established according to the law of the land. The proceedings by which G. D. Rankin was attempted to be made temporary and then permanent guardian of the person and estate of Quimbey Childers were and are not sanctioned by law, as herein pointed out. That proceeding we hold to be a nullity, void from the beginning. We therefore sustain the assignments raising the questions discussed. The other assignments become immaterial.

It becomes our duty, not only to reverse the judgment of the trial court, but to here render the same, since the case has been fully developed. However, since it appears that the land in controversy was attempted to be sold partly in satisfaction of a promissory note amounting to $1,200, due November 1, 1922, and secured by a deed of trust on said land, executed by G. D. Rankin and his wife (the mother of Quimbey Childers), and which instrument is of record in volume 32, page 209, Deed of Trust Records of Comanche county, Tex., it is the order of this court that the judgment be reversed and that judgment be here rendered for the plaintiffs, J. T. Damron and his wife, Laura P. Damron, for the 253 acres of land, but this decree shall in no wise affect the rights, if any, of the owner and holder of said note and deed of

trust lien to enforce same against said lands on that portion in excess of 200 acres stipulated in said deed of trust as the homestead of the grantors therein. It is the further order of this court that all orders of the probate court made in the attempted appointment of said guardian and in authorizing the sale of said lands, and in confirmation of the sale thereof, together with the deed pursuant to such orders, be, and the same are hereby, set aside and canceled. It is so ordered.