The Honorable Mike Beebe State Senator 211 West Arch Avenue Searcy, AR 72143-5331
Dear Senator Beebe:
I am writing in response to your request for an opinion regarding the case of Pre-Paid Solution v. City of Little Rock, 343 Ark. 317,34 S.W.2d 360 (2001). You have asked for an opinion as to what effect, if any, this case has on Act 1231 of 1999, which amended part of the law that is popularly known as the "Chuck E. Cheese law."
RESPONSE
It is my opinion that this case does not affect Act 1231 of 1999, which is codified at A.C.A. §§ 26-57-402 and — 404 (Supp. 2001).
The Arkansas Supreme Court in Pre-Paid Solution, supra, affirmed the trial court's ruling that a certain type of telephone-card vending machine was an illegal gambling device under A.C.A. § 5-66-104. Section5-66-104 is part of the Arkansas Criminal Code. As stated by the Court inPre-Paid Solution, the Criminal Code "prohibits certain types of gaming."343 Ark. at 321 (citing A.C.A. §§ 5-66-101—119).
Act 1231 of 1999 amended the provisions of A.C.A. §§ 26-57-402 and -404, which are part of the set of statutes popularly known as the "Chuck E. Cheese law." This set of statutes was originally enacted in 1939 for the purpose of creating certain exceptions to the Arkansas criminal statutes prohibiting gambling, and to provide for the regulation of those exceptions. The so-called "Chuck E. Cheese law" creates an exception from the antigambling statutes as follows, under A.C.A. § 26-57-402, as amended by Act 1231 of 1999:
 (2)(A) `Any money or property, `other articles', `other valuable things', or `any representative of anything that is esteemed of value', as used in the antigambling statutes, § 5-66-101 et seq., shall not be expanded to include:
 (i) A free amusement feature such as the privilege of playing additional free games if a certain score is made on a pinball table or on any other amusement game described in this section; or
 (ii) Toys, novelties, or representations of value redeemable for those items which are won by the player of a bona fide amusement game or device which rewards players exclusively with merchandise limited to toys, novelties, or representations of value redeemable for those items, which have a wholesale value of not more than ten (10) times the cost charged to play the game or device once or five dollars ($5.00), whichever is less.
 (B) In the event of the accumulation of redeemable representations of value by any player, no toy or novelty having a wholesale value of more than twelve dollars and fifty cents ($12.50) may be given or awarded by any amusement machine operator or redeemed by any player. Said toys and novelties shall be displayed in a single area on each premises. Furthermore, each operator shall maintain records validating the wholesale value of said toys and novelties. Said toys and novelties shall be located solely on the premises where the game is played[.]
A.C.A. § 26-57-402 21) (Supp. 2001).
The term "amusement device" is defined as follows:
 (1) "Amusement devices" means any coin-operated machine, device, or apparatus which provides amusement, diversion, or entertainment and includes, but is not limited to, such games as radio rifles, miniature football, golf, baseball, hockey, bumper pool, tennis, shooting galleries, pool tables, bowling, shuffleboard, pinball tables, marble tables, music vending phonographs, jukeboxes, cranes, video games, claw machines, bowling machines, countertop machines, novelty arcade machines, other similar musical devices for entertainment, and other miniature games, whether or not such machines show a score, and which are not otherwise excluded in this subchapter[.]
A.C.A. § 26-57-402 (1) (Supp. 2001).
There is no reference to this "Chuck E. Cheese law" in Pre-PaidSolution. This law was not at issue in the case, presumably because the particular device in question did not fall within the above provisions pertaining to "amusement devices," as defined in A.C.A. § 26-57-402 (1).
It is therefore my opinion, in response to your specific question, thatPre-Paid Solution has no effect on Act 1231 of 1999.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh